**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NATURAL RESOURCES DEFENSE
COUNCIL, INC.; SIERRA CLUB;
CONSUMER FEDERATION OF
AMERICA; TEXAS RATEPAYERS'
ORGANIZATION TO SAVE
ENERGY; PEOPLE OF THE STATE
OF CALIFORNIA, BY AND
THROUGH ATTORNEY GENERAL
XAVIER BECERRA; CALIFORNIA
STATE ENERGY RESOURCES
CONSERVATION AND
DEVELOPMENT COMMISSION;
STATE OF MARYLAND; STATE OF
WASHINGTON; STATE OF MAINE;
COMMONWEALTH OF
MASSACHUSETTS; STATE OF
VERMONT; STATE OF
CONNECTICUT; COMMONWEALTH
OF PENNSYLVANIA; DISTRICT OF
COLUMBIA; STATE OF ILLINOIS;
STATE OF NEW YORK; STATE OF
OREGON; CITY OF NEW YORK;
STATE OF MINNESOTA,
          *Plaintiffs-Appellees*,

v.

No. 18-15380

D.C. Nos.
3:17-cv-03404-VC
3:17-cv-03406-VC

JAMES R. PERRY, in his official
capacity as Secretary of Energy;
U.S. DEPARTMENT OF ENERGY,
        *Defendants-Appellants*,

and

AIR-CONDITIONING, HEATING, &
REFRIGERATION INSTITUTE,
        *Intervenor-Defendant.*

NATURAL RESOURCES DEFENSE             No. 18-15475
COUNCIL, INC.; SIERRA CLUB;
CONSUMER FEDERATION OF                D.C. Nos.
AMERICA; TEXAS RATEPAYERS'       3:17-cv-03404-VC
ORGANIZATION TO SAVE             3:17-cv-03406-VC
ENERGY; PEOPLE OF THE STATE
OF CALIFORNIA, BY AND
THROUGH ATTORNEY GENERAL              OPINION
XAVIER BECERRA; CALIFORNIA
STATE ENERGY RESOURCES
CONSERVATION AND
DEVELOPMENT COMMISSION;
STATE OF MARYLAND; STATE OF
WASHINGTON; STATE OF MAINE;
COMMONWEALTH OF
MASSACHUSETTS; STATE OF
VERMONT; STATE OF
CONNECTICUT; COMMONWEALTH
OF PENNSYLVANIA; DISTRICT OF
COLUMBIA; STATE OF ILLINOIS;
STATE OF NEW YORK; STATE OF

OREGON; CITY OF NEW YORK;
STATE OF MINNESOTA,
*Plaintiffs-Appellees*,

v.

JAMES R. PERRY, in his official
capacity as Secretary of Energy;
U.S. DEPARTMENT OF ENERGY,
*Defendants*,

and

AIR-CONDITIONING, HEATING, &
REFRIGERATION INSTITUTE,
 *Intervenor-Defendant-Appellant.*

Appeals from the United States District Court
for the Northern District of California
Vince Chhabria, District Judge, Presiding

Argued and Submitted November 14, 2018
San Francisco, California

Filed October 10, 2019

Before: Mary M. Schroeder and Paul J. Watford, Circuit
Judges, and David A. Ezra,[*] District Judge.

Opinion by Judge Watford

---

[*] The Honorable David A. Ezra, United States District Judge for the
District of Hawaii, sitting by designation.

## SUMMARY[**]

## Department of Energy / Regulations

The panel affirmed the district court's order directing the U.S. Department of Energy ("DOE") to publish four energy-conservation standards in the Federal Register.

The district court agreed with the plaintiffs' contention that a DOE regulation known as the "error-correction rule," 10 C.F.R. § 430.5, imposed upon DOE a non-discretionary duty to publish the standards in the Federal Register, and its refusal to do so violated the rule.

The plaintiffs are a group of States and municipalities as well as several environmental and consumer organizations. They brought suit against DOE under the Energy Policy and Conservation Act (EPCA)'s citizen-suit provision.

The panel rejected DOE's challenges to the district court's assertion of jurisdiction under 42 U.S.C. § 6305(a)(2). The panel held that DOE relinquished whatever discretion it might have had to withhold publication of the rules at issue when it adopted the error-correction rule. The panel further held that by delaying publication of the four rules beyond the period permitted under the error-correction rule, DOE violated the non-discretionary duty imposed by its own regulation. The panel also held that plaintiffs were not precluded from bringing the action under 42 U.S.C. § 6305(a)(2). The panel held that

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

§ 6305(a)(2) provided the necessary clear waiver of sovereign immunity from citizen suits predicated on a non-discretionary duty imposed either by statute or regulation.

The panel held that the plaintiffs properly invoked EPCA's citizen-suit provision to challenge DOE's failure to perform is non-discretionary duty to submit the four rules at issue for publication in the Federal Register.

## COUNSEL

H. Thomas Byron III (argued) and Mark B. Stern, Appellate Staff; Alex G. Tse, Acting United States Attorney; Civil Division, United States Department of Justice, Washington, D.C.; for Defendants-Appellants.

Ian Fein (argued), Natural Resources Defense Council, San Francisco, California; Aaron Colangelo, Natural Resources Defense Council, Washington, D.C.; Daniel Carpenter-Gold, Natural Resources Defense Council, New York, New York; for Plaintiff-Appellee Natural Resources Defense Council, Inc.

Timothy D. Ballo, Earthjustice, Washington, D.C., for Plaintiffs-Appellees Sierra Club, Consumer Federation of America, and Texas Ratepayers' Organization to Save Energy.

Somerset Perry (argued) and Jaime Jefferson, Deputy Attorneys General; Susan S. Fiering, Supervising Deputy Attorney General; Sally Magnani, Senior Assistant Attorney General; Office of the Attorney General, Oakland, California; Bryant B. Cannon, Deputy Attorney General; Xavier Becerra, Attorney General; Office of the Attorney

General, San Francisco, California; Lisa Kwong and Timothy Hoffman, Assistant Attorneys General; Patrick A. Woods, Assistant Solicitor General; Environmental Protection Bureau, Office of the Attorney General, Albany, New York; George Jepsen, Attorney General; Robert Snook and Matthew Levine, Assistant Attorneys General; Office of the Attorney General, Hartford, Connecticut; Lisa Madigan, Attorney General; Gerald T. Karr, Assistant Attorney General; Attorney General's Office, Chicago, Illinois; Janet T. Mills, Attorney General; Susan P. Herman, Deputy Attorney General; Office of the Attorney General, Augusta, Maine; Brian E. Frosh, Attorney General; Steven M. Sullivan, Solicitor General; Office of the Attorney General, Baltimore, Maryland; Maura Healey, Attorney General; Shennan Kavanaugh and I. Andrew Goldberg, Assistant Attorneys General; Office of the Attorney General, Boston, Massachusetts; Max Kieley, Assistant Attorney General, Office of the Attorney General, St. Paul, Minnesota; Ellen F. Rosenblum, Attorney General; Benjamin Gutman, Solicitor General; Denise G. Fjordbeck, Attorney-in-Charge, Civil Administrative Appeals; Jesse Ratcliffe, Assistant Attorney General; Natural Resources Section, Oregon Department of Justice, Salem, Oregon; Josh Shapiro, Attorney General; Michael J. Fischer, Chief Deputy Attorney General; Office of the Attorney General, Harrisburg, Pennsylvania; Thomas J. Donovan Jr., Attorney General; Julio A. Thompson and Laura B. Murphy, Assistant Attorneys General; Attorney General's Office, Montpelier, Vermont; Bob Ferguson, Attorney General; Laura J. Watson, Senior Assistant Attorney General; Office of the Attorney General, Olympia, Washington; Karl A. Racine, Attorney General; Loren L. AliKhan, Solicitor General; Office of the Attorney General, Washington, D.C.; Zachary W. Carter, Corporation Counsel; Susan E. Amron, Chief, Environmental Law Division; Haley Stein, Counsel; New York City Law Department, New York,

New York; for Plaintiffs-Appellees People of the State of California, California State Energy Resources Conservation and Development Commission, State of New York, State of Connecticut, State of Illinois, State of Maine, State of Maryland, State of Massachusetts, State of Minnesota, State of Oregon, State of Pennsylvania, State of Vermont, State of Washington, District of Columbia, and City of New York.

Stuart Drake and C. Harker Rhodes IV, Kirkland & Ellis LLP, Washington, D.C.; Mark E. McKane and Austin L. Klar, Kirkland & Ellis LLP, San Francisco, California; for Intervenor-Defendant-Appellant.

## OPINION

WATFORD, Circuit Judge:

These appeals arise from consolidated actions brought by plaintiffs who seek to compel the United States Department of Energy (DOE) to promulgate four energy-conservation standards. The standards received final approval by DOE at the end of the Administration of President Obama, but thus far, under the Administration of President Trump, DOE has declined to promulgate them. The plaintiffs contend that a DOE regulation known as the "error-correction rule," 10 C.F.R. § 430.5, imposes upon DOE a non-discretionary duty to publish the standards in the Federal Register, and that its refusal to do so violates the rule. The district court agreed and issued an order directing DOE to publish the four standards in the Federal Register. *Natural Resources Defense Council, Inc. v. Perry*, 302 F. Supp. 3d 1094 (N.D. Cal. 2018). We stayed that order pending resolution of DOE's appeal.

Although both sides have advanced compelling arguments in support of their respective positions, we find the plaintiffs' arguments more persuasive. We therefore affirm the district court's decision.

I

A

We begin with an overview of the statutory and regulatory framework. As relevant here, the Energy Policy and Conservation Act (EPCA), 42 U.S.C. §§ 6291–6317, authorizes DOE to establish energy-conservation standards for certain consumer products and industrial equipment. DOE establishes or amends energy-conservation standards through formal notice-and-comment rulemaking proceedings. §§ 6306(a), 6316(a). An energy-conservation standard is promulgated when DOE publishes a final rule prescribing the standard in the Federal Register.

A somewhat unusual provision of EPCA, known as the "anti-backsliding" provision, prohibits DOE from promulgating an amended standard that is less stringent than the preexisting standard. §§ 6295(o)(1), 6313(a)(6)(B)(iii)(I); *see Natural Resources Defense Council v. Abraham*, 355 F.3d 179, 187 (2d Cir. 2004). As DOE discovered during litigation in the Fifth Circuit, if a standard contains inadvertent errors, the anti-backsliding provision can make it difficult to correct those errors after the final rule establishing the standard has been published in the Federal Register.

In 2016, DOE sought to address this problem by adopting the error-correction rule. The rule creates a brief, 45-day window between DOE's issuance of a final rule establishing an energy-conservation standard and the rule's

publication in the Federal Register. During that 45-day period, DOE posts the rule on its website and invites members of the public to identify any errors that should be corrected before the standard is promulgated. 10 C.F.R. § 430.5(c)(1), (d)(1). The error-correction rule defines the term "error" narrowly as "an aspect of the regulatory text of a rule that is inconsistent with what the Secretary intended regarding the rule at the time of posting," and gives as examples typographical, calculation, or numbering mistakes. § 430.5(b). Requests for correction may not be premised on "disagreement with a policy choice that the Secretary has made," and DOE will not consider any new evidence submitted in connection with a correction request. § 430.5(d)(2)–(3). As DOE explained, the error-correction process is not an opportunity to "seek to reopen issues that DOE has already addressed or argue for policy choices different from those reflected in the final rule." Establishment of Procedures for Requests for Correction of Errors in Rules, 81 Fed. Reg. 26,998, 26,999 (May 5, 2016).

The error-correction rule provides that, after the 45-day period ends, the Secretary of Energy "may respond to a request for correction . . . or address an Error discovered on the Secretary's own initiative by submitting to the Office of the Federal Register either a corrected rule or the rule as previously posted." 10 C.F.R. § 430.5(e). The error-correction rule addresses each of the three scenarios that can arise upon completion of the error-correction process, and specifies timeframes within which the Secretary "will" submit the final rule for publication in the Federal Register:

> (f) Publication in the Federal Register.
>
> (1) If, after receiving one or more properly filed requests for correction, the

Secretary decides not to undertake any corrections, the Secretary *will submit the rule for publication* as it was posted pursuant to paragraph (c)(1) of this section.

(2) If the Secretary receives no properly filed requests after posting a rule and identifies no Errors on the Secretary's own initiative, the Secretary *will in due course submit the rule*, as it was posted pursuant to paragraph (c)(1) of this section, *to the Office of the Federal Register for publication*. This will occur after the [45-day] period prescribed by paragraph (c)(2) of this section has elapsed.

(3) If the Secretary receives a properly filed request after posting a rule pursuant to (c)(1) and determines that a correction is necessary, the Secretary *will, absent extenuating circumstances, submit a corrected rule for publication in the Federal Register* within 30 days after the period prescribed by paragraph (c)(2) of this section has elapsed.

§ 430.5(f)(1)–(3) (emphasis added).

B

With that background in mind, we can turn to the facts giving rise to this dispute. In December 2016, after lengthy rulemaking proceedings, DOE finalized the four energy-conservation standards at issue by posting on its website final rules prescribing the standards. Each standard covers a different set of products: portable air conditioners,

commercial packaged boilers, uninterruptible power supplies, and air compressors.  Each of the final rules was signed by the appropriate DOE official and states that "[t]he Secretary of Energy has approved publication of this final rule."  The 45-day error-correction period ended on January 19, 2017, for the rule governing air compressors, and on February 11, 2017, for the rules governing the other three products.

DOE received one minor correction request relating to the rule for commercial packaged boilers (changing the symbol ">" to "≥" in a table), and no correction requests for the remaining three rules.  Nevertheless, after the 45-day error-correction period ended, DOE refused to submit any of the rules to the Office of the Federal Register for publication. It still has not done so, informing us in its brief and at oral argument that the agency "is continuing to review" the rules.

The plaintiffs are a group of States and municipalities as well as several environmental and consumer organizations. They brought suit against DOE under EPCA's citizen-suit provision, which, as relevant here, authorizes any person to bring a civil action against an agency such as DOE "where there is an alleged failure of such agency to perform an act or duty under this part which is not discretionary."  42 U.S.C. § 6305(a)(2).[1]  The plaintiffs allege that the error-correction rule imposes upon DOE a non-discretionary duty to publish the four rules at issue in the Federal Register.

---

[1] Section 6305(a)(2) provides:  "Except as otherwise provided in subsection (b) of this section, any person may commence a civil action against . . . any Federal agency which has a responsibility under this part where there is an alleged failure of such agency to perform any act or duty under this part which is not discretionary."

The district court denied DOE's motion to dismiss the action and granted the plaintiffs' motion for summary judgment.  The court held that it had jurisdiction to hear the suit under § 6305(a)(2).  That provision, the court concluded, authorizes suits for enforcement of non-discretionary duties imposed by regulations such as the error-correction rule; the court rejected the government's argument that the provision's scope is limited to duties imposed by statute. 302 F. Supp. 3d at 1097.  The court also concluded that the error-correction rule imposes upon DOE a non-discretionary duty to publish the four rules at issue, and that DOE has violated that duty by withholding publication.  *Id.* at 1100–01.  The court accordingly ordered DOE to publish the four rules in the Federal Register within 28 days.

## II

On appeal, DOE renews its challenges to the district court's assertion of jurisdiction under 42 U.S.C. § 6305(a)(2).  DOE contends that the error-correction rule does not impose a mandatory duty to publish final rules in the Federal Register upon completion of the error-correction process.  And it contends that, even if the error-correction rule imposes such a duty, the plaintiffs cannot invoke § 6305(a)(2) because that provision only authorizes suits for the enforcement of non-discretionary duties imposed by statute.  Like the district court, we reject both of these arguments.

## A

To invoke the district court's jurisdiction under § 6305(a)(2), the plaintiffs must identify a failure by DOE to perform an act or duty "which is not discretionary." 42 U.S.C. § 6305(a)(2).  They contend that DOE had a non-discretionary duty to publish the four rules at issue upon

completion of the error-correction process. In asserting such a duty, the plaintiffs acknowledge that, ordinarily, agencies are free to withdraw a proposed rule before it has been published in the Federal Register, even if the rule has received final agency approval. *See Kennecott Utah Copper Corp. v. U.S. Department of Interior*, 88 F.3d 1191, 1206 (D.C. Cir. 1996); Anne Joseph O'Connell, *Agency Rulemakings and Political Transitions*, 105 Nw. U. L. Rev. 471, 529 (2011). Indeed, regulations governing the Office of the Federal Register generally permit an agency to withdraw a final rule even after it has been submitted to the Office for publication, so long as the rule has not yet been published. 1 C.F.R. § 18.13(a); *see Kennecott*, 88 F.3d at 1206. In *Kennecott*, the D.C. Circuit held that an agency could withdraw regulations that were submitted to the Office of the Federal Register at any time up until the regulations were made available for public inspection. 88 F.3d at 1205–06. The government urges us to reach the same conclusion here. But the regulations at issue in *Kennecott* were never made available for public inspection with the expectation that they would become final, as the rules here were. And, of course, there could have been no argument in *Kennecott* that the agency had a mandatory duty to publish the regulations due to anything similar to the error-correction rule.

The district court held that DOE relinquished whatever discretion it might have had to withhold publication of the rules at issue here when it adopted the error-correction rule. 302 F. Supp. 3d at 1098. We think the plain language of the error-correction rule supports that reading, and that the absence of genuine ambiguity in the rule's meaning precludes us from deferring to DOE's contrary interpretation. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019).

The error-correction rule states that, at the end of the error-correction process, the Secretary "will" submit the final rule for publication in the Federal Register. 10 C.F.R. § 430.5(f)(1)–(3). The word "will," like the word "shall," is a mandatory term, *see Washington v. Harper*, 494 U.S. 210, 221 (1990), unless something about the context in which the word is used indicates otherwise. *See Webber v. Crabtree*, 158 F.3d 460, 461 (9th Cir. 1998) (per curiam). We see nothing in the rule's text or regulatory history to suggest that the word "will" was meant to carry anything other than its ordinary, mandatory connotation here.

Section 430.5(f), titled "Publication in the Federal Register," is the most relevant provision. It addresses each of the possible scenarios that could arise at the end of the error-correction process: (1) no requests for correction are received and the Secretary identifies no errors on his own; (2) a request for correction is received but the Secretary decides not to make any corrections; or (3) a request for correction is received and the Secretary decides that a correction is warranted. In each of those scenarios, § 430.5(f) states without qualification that the Secretary "will submit the rule for publication," "will in due course submit the rule for publication," or "will, absent extenuating circumstances, submit a corrected rule for publication in the Federal Register within 30 days." 10 C.F.R. § 430.5(f)(1)–(3).[2] In adopting the error-correction rule, DOE reiterated the binding nature of these provisions: "The error correction rule *prescribes a timeline* under which DOE *will submit* a

---

[2] DOE has made clear that the phrase "absent extenuating circumstances" in subsection (f)(3) qualifies the 30-day timeframe for publication, not the duty to publish itself. *See* Notice of Partial Grant and Partial Denial of Petitions to Amend the Error Correction Rule, 81 Fed. Reg. 57,745, 57,750 (Aug. 24, 2016).

rule to the Office of the Federal Register for publication." Notice of Partial Grant and Partial Denial of Petitions to Amend the Error Correction Rule, 81 Fed. Reg. 57,745, 57,750 (Aug. 24, 2016) (emphasis added).

Given the mandatory character of these pronouncements, it would be unnatural to read the word "will" in § 430.5(f) to mean "may."    Although § 430.5(e) states that "[t]he Secretary *may* respond to a request for correction . . . or address an Error discovered on the Secretary's own initiative," even that provision makes clear that the Secretary's response is limited to one of two options: "submitting to the Office of the Federal Register either a corrected rule or the rule as previously posted."  10 C.F.R. § 430.5(e) (emphasis added).  We thus agree with the district court's observation that, "once the Department has posted an energy standard for error correction and the time to submit requests for correction has passed, subsection (f) of the Rule gives the Department only two options: publish the standard as posted, or correct any errors in the standard and publish it as corrected."  302 F. Supp. 3d at 1098.

DOE nonetheless contends that, as used in § 430.5(f), the word "will" was intended to be merely descriptive rather than prescriptive.  DOE reads § 430.5(f) as describing what the agency anticipates will *ordinarily* occur at the end of the error-correction process, leaving the Secretary free to do something different if he so chooses.  We do not think that is a plausible reading of the provision's language.  As the plaintiffs point out, when the word "will" is used elsewhere in the error-correction rule, it is used in its mandatory sense, to prescribe what the agency is required (or forbidden) to do.  For example, § 430.5(c) states that the Secretary "will cause a rule under the Act to be posted on a publicly-accessible Web site" to commence the error-correction process, and

that the Secretary "will not submit a rule for publication in the Federal Register" during the 45-day period that follows. 10 C.F.R. § 430.5(c)(1)–(2). DOE does not claim that these provisions are merely descriptive of ordinary practice, or that the Secretary is free to ignore their commands. Indeed, in the one instance where the error-correction rule clearly does seek to describe what the agency anticipates will ordinarily occur, rather than to prescribe a required action, the rule says exactly that: "[T]he Secretary *will ordinarily* designate an effective date for a rule under this section that is no less than 30 days after the publication of the rule in the Federal Register." § 430.5(f)(5) (emphasis added).

DOE argues that we should not read the error-correction rule as imposing a non-discretionary duty to publish because the rule does not explicitly divest the Secretary of the discretion he would otherwise possess to withdraw a final rule prior to publication. We confronted and rejected a similar argument in *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764 (9th Cir. 2006). There, the Office of Foreign Assets Control (OFAC) adopted a regulation stating that if the agency imposed a penalty that remained unpaid after 30 days, "the matter shall be referred to the United States Department of Justice for appropriate action to recover the penalty in a civil suit in a Federal district court." *Id.* at 778 (quoting 31 C.F.R. § 575.705 (2002)). OFAC argued that, because the regulation was silent about using private collection agencies, it retained the discretion to refer collection matters to them rather than to the Department of Justice. We labeled that argument "patently absurd." *Id.* at 780. We held that the regulation's use of the word "shall" unambiguously imposed "a mandatory duty that is not subject to discretion." *Id.* at 778. And we refused to require that an agency "articulate all of the acts the agency may *not* engage in simply to guarantee that mandatory prescriptions

are followed." *Id.* at 780. That reasoning applies with equal force to the error-correction rule. In our view, the rule's use of the word "will" unambiguously imposes a mandatory duty that constrains whatever discretion the Secretary might otherwise have possessed.

We find DOE's remaining argument unpersuasive. It is true that the error-correction rule does not set date-certain deadlines by which the Secretary must submit a rule for publication after the 45-day error-correction period ends. However, we do not think that fact renders the duty to publish discretionary. Section 430.5(f)(3) states that when the agency decides a correction is warranted, the Secretary will generally submit the corrected rule for publication within 30 days, "absent extenuating circumstances." 10 C.F.R. § 430.5(f)(3). That general 30-day deadline informs the interpretation of subsections (f)(1) and (f)(2), which apply when the agency decides not to make any corrections. Those provisions state that the Secretary will submit the rule for publication as it was originally posted, either without specifying any timeframe for doing so (when a request for correction is received but not acted upon) or "in due course" (when no requests for correction are received). § 430.5(f)(1)–(2). In either scenario, though, 30 days would necessarily mark the outer limit for performing the ministerial task of submitting the *original* rule for publication, because the agency bound itself to submit a *corrected* rule within that timeframe in all but unusual circumstances.

Here, the Secretary had a non-discretionary duty to submit all four rules for publication in the Federal Register within 30 days after the error-correction process ended. DOE received a request for correction as to only one of the rules, and the agency has not claimed that extenuating

circumstances precluded it from resolving that request within the normal 30-day timeframe. As to the other three rules for which no requests were received, the Secretary was required to submit the original rule for publication "in due course," § 430.5(f)(2), a period that elapsed at the latest 30 days after the 45-day error-correction period ended. By delaying publication of the four rules beyond the period permitted under the error-correction rule, DOE has violated the non-discretionary duty imposed by its own regulation.

B

DOE next argues that, even if the error-correction rule imposes upon it a non-discretionary duty to publish, the plaintiffs are still precluded from bringing this action under 42 U.S.C. § 6305(a)(2). That is so, the agency asserts, because the provision requires the plaintiffs to identify an alleged failure by DOE to perform an "act or duty under this part," meaning Part A of Subchapter III, Chapter 77 (42 U.S.C. §§ 6291–6309). In the agency's view, the phrase "under this part" refers solely to duties imposed by statute, not to duties imposed by regulations such as the error-correction rule.

We do not find DOE's reading of § 6305(a)(2) convincing. As we read it, the phrase "under this part" encompasses duties imposed by statute and regulation alike, so long as the regulation in question was issued under Part A of Subchapter III. It is undisputed that DOE promulgated the error-correction rule under the authority granted to it by Part A. *See* Establishment of Procedures for Requests for Correction of Errors in Rules, 81 Fed. Reg. at 27,005 ("Authority: 42 U.S.C. §§ 6291–6309; 28 U.S.C. § 2461 note.").

DOE's reading of § 6305(a)(2) as limited to statutory duties is unconvincing for several reasons.  First, throughout EPCA, Congress consistently used the phrase "under this part" or "under this section" when referring to requirements established by regulation.  For example, EPCA refers to energy-conservation standards "prescribed under this part," 42 U.S.C. § 6302(a)(5); final rules "published under this part," § 6295(n)(5)(B); and test procedures prescribed "under this section," § 6314(b).  In contrast, when Congress wanted to refer only to statutory provisions, it used distinct phrases such as "of this part" or "established in."  For example, EPCA authorizes the Secretary and the Federal Trade Commission to "issue such rules as each deems necessary to carry out the provisions *of this part*."  § 6298 (emphasis added).    And § 6302 refers to energy-conservation standards "*established in* or prescribed under this part," to distinguish between standards imposed by statute and those imposed by regulation.  § 6302(a)(5) (emphasis added).  This consistent pattern supports the view that Congress used the phrase "under this part" to include regulatory obligations.  *See Sierra Club v. Leavitt*, 355 F. Supp. 2d 544, 556–57 (D.D.C. 2005) (reaching the same conclusion with respect to the Clean Air Act's materially identical citizen-suit provision).

Second, other than § 6305(a)(2), DOE has not identified a single provision in which Congress supposedly used the phrase "under this part" to refer exclusively to statutory provisions.  The plaintiffs, on the other hand, have identified at least one other provision of EPCA that would be rendered nonsensical if we adopted DOE's reading of the phrase.  In § 6309, Congress authorized the appropriation of specific sums to the Secretary for fiscal years 1976–1979 "to carry out his responsibilities *under this part*."  42 U.S.C § 6309(a) (emphasis added).  DOE has not explained why, under its

reading, Congress would have authorized the Secretary to spend the appropriated funds to carry out his statutory responsibilities but not his regulatory responsibilities.

Third, far from supporting DOE's reading of § 6305(a)(2), we think the language of a neighboring subsection, § 6305(a)(1), confirms that the phrase "under this part" encompasses regulatory duties. Section 6305(a)(1) authorizes citizen suits against "any manufacturer or private labeler who is alleged to be in violation of any provision of this part or any rule under this part." 42 U.S.C. § 6305(a)(1). DOE asks us to contrast subsection (a)(1)'s use of the phrase "any rule under this part" with subsection (a)(2)'s use of the phrase "any act or duty under this part," and to conclude that Congress must have intended to exclude regulatory duties from the sweep of (a)(2) because (a)(2) does not mention "rules." We do not think that conclusion follows at all. The key phrase in both provisions is "under this part": Just as rules are "under this part" because they are established through regulations promulgated under the authority of Part A, so too with duties. Indeed, the language of subsection (a)(1) itself reinforces the pattern discussed earlier, with Congress using the phrase "of this part" to refer solely to statutory provisions, and the phrase "under this part" when referring to regulatory obligations.

DOE relies on *Kucana v. Holder*, 558 U.S. 233 (2010), to support its position, but in our view that case is readily distinguishable. In *Kucana*, the Supreme Court interpreted a provision that precluded judicial review of any decision by the Attorney General "the authority for which is specified *under this subchapter*" to be in the discretion of the Attorney General. 8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added). The Court held that this provision barred judicial review only of "determinations made discretionary by statute," not

those "declared discretionary by the Attorney General himself through regulation." 558 U.S. at 237. But none of the reasons the Court gave for reaching that conclusion applies to the statute before us. The Court in *Kucana* stressed that § 1252(a)(2)(B) is "sandwiched between" two other subsections that contain only statutory references, leading one to "expect that it, too, would cover statutory provisions alone." *Id.* at 246. In addition, the Court noted that the statute had been enacted against the well-settled "presumption favoring judicial review of administrative action," which requires clear and convincing evidence to dislodge. *Id.* at 251–52. Finally, the Court emphasized, as a "paramount factor" in its decision, the separation-of-powers concerns that would have been raised by construing the statute to allow the Attorney General to place his own decisions beyond judicial review "simply by issuing a regulation declaring those decisions 'discretionary.'" *Id.* at 237, 252. DOE does not contend that any of these considerations should (or could) drive the interpretation of the statute at issue here.

We hold that § 6305(a)(2) provides the necessary "clear and unequivocal waiver" of sovereign immunity from citizen suits predicated on a non-discretionary duty imposed either by statute or regulation. *U.S. Department of Energy v. Ohio*, 503 U.S. 607, 619 (1992). The plaintiffs therefore properly invoked EPCA's citizen-suit provision to challenge DOE's failure to perform its non-discretionary duty to submit the four rules at issue for publication in the Federal Register.

\*          \*          \*

The unopposed motion for judicial notice filed by Intervenor Air-Conditioning, Heating, and Refrigeration Institute is **GRANTED**. Upon issuance of the mandate from

this court, the stay entered on April 11, 2018 (Dkt. 42 in Case No. 18-15380; Dkt. 38 in Case No. 18-15475), is **DISSOLVED**.

**AFFIRMED.**